**ENTRY ORDER**

2018 VT 6

SUPREME COURT DOCKET NO. 2017-442

JANUARY TERM, 2018

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| v. | } Superior Court, Washington Unit, |
| | } Criminal Division |
| Jeffrey Kittredge | } |
| | DOCKET NO. 1211-11-17 Wncr |
| | Trial Judge: Howard E. Van Benthuysen |

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant Jeffrey Kittredge appeals from the denial of public defender services in the trial court below.  Because the court did not go through the proper process in determining defendant's qualification for appointed counsel, we reverse and remand for further proceedings consistent with this entry order.

¶ 2.    The relevant facts are as follows.  On November 16, 2017, defendant was arraigned and pled not guilty to three counts of neglect of a vulnerable adult resulting in bodily injury, in violation of 13 V.S.A. § 1378(b); one count of manslaughter, in violation of 13 V.S.A. § 2304; and one count of welfare fraud, in violation of 33 V.S.A § 141(d).  The court imposed conditions of release, and defendant gave an unsecured appearance bond in the form of $25,000 cash bail.

¶ 3.    Docket entries reflect that the trial court denied defendant's initial request for a public defender at his November arraignment.  Defendant re-submitted his application, which the court denied because his income "exceed[ed] financial guidelines."  Defendant moved to reconsider.  In December 2017, the court denied this motion because defendant's "income and family size disqualify him from receiving a public defender."  This appeal followed.

¶ 4.    We typically review a trial court's decision on whether an applicant qualifies for public defender services for abuse of discretion.  State v. Higginbotham, 174 Vt. 640, 640, 816 A.2d 547, 549 (2002) (mem.).  This case, however, calls on us to examine whether the trial court conducted the proper analysis in determining whether to appoint counsel.  We review this legal question without deference. Id.

¶ 5.    As we have previously recognized, in assessing a defendant's eligibility for public defender services, "[w]e are dealing . . . with an important constitutional right; the assistance of counsel is often essential to the very existence of a fair trial.  Our concern is that each case be given the careful consideration commensurate with the right at stake."  State v. Lathe, 132 Vt. 631, 633, 326 A.2d 147, 149 (1974).

¶ 6.     The public defender statute outlines a two-step process for evaluating eligibility for public defender services.  First, a court determines whether an individual is "needy," and therefore eligible for public defender services, 13 V.S.A. § 5236, and then it calculates the copay the applicant is required to contribute towards the representation.  Id. § 5238.  The Legislature has defined a "needy person" as a "person who at the time his or her need is determined is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of representation or who is otherwise unable to employ an attorney."  Id. § 5201(3).  In determining whether an applicant is a needy person and the extent of his or her ability to pay, "the court may consider such factors as income, property owned, outstanding obligations, and the number and ages of dependents" as specified in rules adopted by this Court.  Id. § 5236(b).

¶ 7.     By administrative order, and pursuant to authority conferred by the Legislature, this Court has provided additional guidance regarding the process for securing public defender services, and the standards for evaluating eligibility.  See 13 V.S.A. § 5204; A.O. 4.  The Court's administrative order includes a definition of "needy" that is consistent with the statutory definition.  A.O. 4, § 5(b).  In addition, the Court has created two presumptions governing the determination of financial need.  First, "[a]ny person receiving any kind of welfare aid which constitutes a major portion of subsistence is presumed to be a needy person."  Id. § 5(c)(1).  This presumption reflects the fact that eligibility for welfare aid is means-tested.  Someone for whom means-tested benefits constitute a major portion of subsistence can reasonably be presumed to be "needy" as defined by statute and administrative order.  Second, a person "whose gross income is at or below poverty income guidelines for nonfarm families" is presumed to be a needy person.  Id. § 5(c)(2).  The applicable poverty guidelines are incorporated as an appendix to the administrative order.  Id.

¶ 8.     By rule, then, an individual who fits within one of the presumptions defined in A.O. 4, § 5(c) is a needy person.  However, the inverse proposition is not necessarily true.  That is, just because a person does not qualify for either rule-based presumption of need does not mean that the person is not needy.  The presumptions reflected in A.O. 4, § 5(c) simplify the "need" determination in cases in which the presumptions apply, but do not purport to supplant the overarching statutory definition of "needy."  In cases in which an individual does not qualify for either presumption, a judicial officer must still make a determination as to whether the individual qualifies as a needy person.  See Higginbotham, 174 Vt. at 641, 816 A.2d at 550 ("[A]lthough the poverty guidelines establish the threshold income for qualifying for state assistance, persons with incomes that the exceed poverty guidelines may receive a state contribution toward their defense, although they must share in the cost.").

¶ 9.     In making this assessment, the judicial officer may consider income, property owned, outstanding obligations, and the number and ages of dependents, see 13 V.S.A. § 5236(b), as well as assets and current expenses.  A.O. 4, § 5(b).  The statutory and administrative lists of factors the court may consider are nonexclusive.  The judicial officer may consider other factors that bear on the question of whether a person is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of representation.  For example, the nature and complexity of the charges and the likely associated cost of representation and necessary expenses may be relevant considerations.  To facilitate meaningful appellate review, the trial court must make specific findings of fact to support a denial of counsel.  Lathe, 132 Vt. at 634, 326 A.2d at 149 ("[I]t is absolutely essential to fairness and to any meaningful form of appellate review that specific findings of fact be entered to support a denial of appointed counsel.").

¶ 10.     Significantly, if an individual does qualify as a needy person, the court must still assess a copay commensurate with the individual's ability to pay.  See 13 V.S.A. § 5238(b); A.O. 4, § 5(d)-(f).

In assessing the copayment or reimbursement amounts, the court considers the income of the applicant and his or her cohabiting family members. 13 V.S.A. § 5238(b); A.O. 4, § 5(d). The Legislature's inclusion of guidance as to how to calculate the required copay for defendants whose family income is more than 200% of the poverty level applicable to defendant's family size reinforces our conclusion above that, merely because an applicant is not presumed needy on the basis of income does not necessarily mean he or she is ineligible for needy person status.

¶ 11. In this case, the trial court initially held that defendant's income "exceed[ed] financial guidelines," and its final ruling stated only that defendant did not qualify due to his "income and family size." These findings suggest that the trial court evaluated whether defendant qualified for presumptive "needy person" status on the basis of A.O. 4, § 5(c)(2). Insofar as they are the only findings provided by the trial court, we cannot discern whether, beyond consulting the federal poverty guidelines, the trial court conducted the requisite broader analysis of the ultimate "needy person" question and, if so, why it reached the conclusion it did. For that reason, we remand this case for reconsideration of defendant's application consistent with this order. Defendant may file a new and updated application on remand if the information in the application on file is no longer fully accurate.

<u>Remanded for consideration of defendant's application for public defender services.</u>

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
Marilyn S. Skoglund, Associate Justice

☐ Do Not Publish

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

3